UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | No. 17 CV 01991 (13 CR 592) |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| FRANK ORLANDO, | ) | |
| | ) | |
| Defendant-Petitioner. | ) | |

**MEMORANDUM OPINION AND ORDER**

Frank Orlando, a federal inmate proceeding *pro se*, has filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.[1] R.1, Pet.'s Mot.[2] A jury found Orlando guilty of conspiring to commit extortion by the wrongful use of threatened force, violence, or fear. 18 U.S.C. § 1951; Crim. R. 269 (Oct. 8, 2014).[3] In April 2015, he was sentenced to 46 months in prison. Crim. R. 491 (April 20, 2015). His conviction was affirmed by the Seventh Circuit, Crim. R. 625, and this motion followed. Now, Orlando challenges his sentence, arguing that he received ineffective assistance of counsel and that the Court inaccurately refused to apply a minor-role reduction to his Sentencing Guidelines calculations. Pet.'s Br. at 4, 8-9. For the following reasons, Orlando's motion is denied and no certificate of appealability will issue.

---

[1]This Court has subject matter jurisdiction over the case under 28 U.S.C. § 2255, as this Court imposed the original sentence.

[2]Citation to the civil docket is "R." followed by the entry number and, when necessary, the relevant page or paragraph number.

[3]"Crim. R." refers to the docket in the criminal case, *United States v. Dziuban et al.*, No. 13-CR-00592.

## I. Background

Between the spring and fall of 2010, Frank Orlando conspired with Mark Dziuban, George Brown, Vito Iozzo, and Robert McManus to collect business debts owed to American Litho through extortion, namely, by way of threatened force, violence, and fear. *United States v. Orlando*, 819 F.3d 1016, 1019 (7th Cir. 2016). Mark Dziuban was the owner of American Litho, an Illinois printing company. Dziuban had a business relationship with Orlando (who was an ink salesman). *Id.* Dziuban asked Orlando for help to collect the debts after legal routes failed. *Id.* In turn, Orlando recruited others to confront the debtors and extort money from them. *Id.* at 1020. In various combinations, Brown, Iozzo, and McManus traveled to Nevada, New York, New Jersey, and Wisconsin to try to collect on the debts. *Id.* at 1020-21. Although Orlando did not attend the actual shakedowns, he recruited Brown into the extortionate conspiracy, delivered an envelope of travel-expense money to co-conspirators, and participated in the cover-up of the crimes after law enforcement started investigating. *Id.*

Orlando went to trial on the charge of conspiring to commit extortion through the wrongful use of force, and the jury convicted him. Crim. R. 269 (Oct. 8, 2014). In April 2015, he was sentenced to a below-Guidelines sentence of 46 months in prison. Crim. R. 491; *see* Sentencing Hearing Tr., Crim. R. 518 at 14-15.

In his direct appeal, Orlando argued that his sentence was unreasonable and that this Court erred in denying him the minor-role adjustment. *Orlando*, 819 F.3d

at 1019. In May 2016, the Seventh Circuit affirmed his sentence. *Id.* This timely filed § 2255 motion followed.

## II. Legal Standard

### A. Section 2255

Under 28 U.S.C. § 2255, a prisoner in custody pursuant to a federal sentence may move to vacate his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack ...." 28 U.S.C. § 2255. In other words, to obtain relief under § 2255, Orlando must show that the error asserted is "jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997).

Section 2255, however, "is not a substitute for a direct appeal." *Id.* at 706; *see also Qualls v. United States*, 774 F.2d 850, 851 (7th Cir. 1985) (citing *United States v. Addonizio*, 442 U.S. 178, 184 (1979)). Consequently, "[i]f any issue could have been raised on direct appeal, the failure to take such appeal precludes review pursuant to a section 2255 motion unless the petitioner can show 'cause' for the procedural default and 'actual prejudice' resulting from the errors of which the petitioner complains." *Qualls*, 774 F.2d at 851 (quoting *United States v. Frady*, 456 U.S. 152, 167 (1982)); *see also Bontkowski v. United States*, 850 F.2d 306, 313 (7th Cir. 1988). There is an exception, however, for ineffective-assistance claims, which

3

are not subject to the "cause and prejudice" standard. *See Massaro v. United States*, 538 U.S. 500, 503 (2003) ("[T]here is no procedural default for failure to raise an ineffective-assistance claim on direct appeal."). That is because bringing ineffective assistance claims on direct appeal may create a risk that defendants feel compelled to raise the issue "before there has been an opportunity fully to develop" the factual claims. *Id.* at 504. Here, many of Orlando's claims are based on allegations that his counsel was ineffective, so the Court proceeds under the *Strickland* standard where appropriate.

## B. Ineffective Assistance of Counsel

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. To win on his ineffective-assistance-of-counsel claim, Orlando must meet the familiar two element standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, Orlando must show both that his trial counsel's performance was deficient and that he was prejudiced as a result. *Id.* at 687. On the performance element, the question is whether "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.

Judicial review of trial counsel's performance "must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. The Court must presume that "the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks and citation omitted). On the prejudice element, Orlando must

show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

## III. Analysis

### 1. Ineffective Assistance of Counsel at Trial

Orlando's primary accusation is that his attorney allegedly failed to raise a *mens rea* defense at trial. Pet.'s Br. at 4-5. Even liberally construing his *pro se* filing, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the basis for this accusation is unclear. Orlando seems to think that his attorney failed to argue that Orlando did not have the intent to enter into a conspiracy to extort through violence, because he supposedly did not knowingly enter into an arrangement where he knew violence would be threatened. But Orlando's attorney *did* challenge the government's argument that Orlando had the requisite mental state for a conspiracy to commit extortion by threatened force.[4]

In setting out the theory of defense at trial, Orlando's attorney tried to paint Orlando as having a minor, non-conspiratorial role, arguing that "all he did was know some people" and that Orlando never said his contacts would "threaten" or "scare" debtors. Tr. 220, 226-27. Much of the defense was devoted to illustrating (or at least trying to illustrate) Orlando's limited involvement and ignorance about any

---

[4]Orlando briefly mentions that counsel "failed to utilize renunciation (recantation?)" as an affirmative defense, but does not further explain. Pet.'s Br. at 4. Because there is "simply no evidence of any affirmative act" by Orlando "that would communicate to [co-conspirators] or anyone else that he had renounced the goals of the conspiracy," Orlando does not have a factual basis to assert that he withdrew from the conspiracy. *United States v. Bafia,* 949 F.2d 1465, 1478 (7th Cir. 1991). It was thus reasonable for his counsel to pass on a withdrawal argument, and indeed making that argument would have undermined Orlando's main argument that he was not a part of *any* conspiracy. *See* Tr. 220, 226-27.

purported violence. *See* Tr. 1522, 1525-26 ("They have nothing to corroborate that Frank Orlando ever joined the so-called conspiracy to extort … Frank Orlando said, yeah, I have someone who can collect a debt. That is it."). Through cross examination, his attorney tried to distance Orlando from any knowledge of threats of violence by establishing that the co-conspirators did not outright discuss specific tactics at the meetings Orlando attended. *See, e.g.*, Tr. 1235-37, 1272-73 ("During that meeting that Frank Orlando was at, you don't specifically say that you are going to threaten the man in Wisconsin, right?" … "You don't say that you are going to hit him?"). This theory of defense is exactly what Orlando says his trial lawyer failed to do. To be sure, ultimately the defense failed in the face of substantial evidence: the very nature of the effort—sending Brown ("an imposing figure weighing more than 300 pounds," *Orlando,* 819 F.3d at 1024) to collect on debts by surprising the debtors unannounced, and Orlando's cover-up effort (which was recorded by law enforcement)—is textbook extortion. So, not surprisingly, the defense theory did not convince the jury that Orlando was not a member of the conspiracy. Hindsight, however, does not make the defense strategy unreasonable— particularly where it is, in essence, the same theory Orlando advances in his § 2255 motion. Pet.'s Br. at 4-5.

Relatedly, Orlando argues that his attorney "failed to take advantage of the government's failure to prove" the required mental state, because witnesses did not testify to "any direct threats," and that "no physical violence was ever" actually

6

used. Pet.'s Br. at 6 (citing Tr. 671-72, 937).[5] As already discussed, Orlando's attorney *did* argue that the lack of actual violence and the lack of overt threats undermined the government's case. Orlando seems to argue that the "lack of any threat of violence or force" dispositively proved that he lacked the intent needed for a Hobbs Act extortion. Pet.'s Br. at 7. But that is not so. An explicit threat is not necessary for a conviction under the Act, as the Seventh Circuit held in this very case. *Orlando,* 819 F.3d at 1023-24 (citing *Rennell v. Rowe*, 635 F.3d 1008, 1011 (7th Cir. 2011)). And the New Jersey extortion attempt provides an example: Brown, McManus, and Iozzo crowded into the victim's small office, demanded money, and when the victim did not pay on the spot, Brown said that "we will be back." Tr. 1128; *Orlando*, 819 F.3d at 1024. To any reasonable victim, that confrontation could easily evoke fear and be perceived as a threat, even if no one explicitly threatened to use force.

The mere fact that Orlando *himself* did not deliver the threats does not help him. Under the well-established *Pinkerton* doctrine of conspiratorial liability, Orlando was criminally responsible for the reasonably foreseeable acts of his co-conspirators in furtherance of the conspiracy. *Pinkerton v. United States*, 328 U.S. 640, 646-48 (1946); *e. g., United States v. Garcia*, 754 F.3d 460, 471 (7th Cir. 2014). Orlando, as part of the conspiracy to collect the debts, is accountable for the implicit threats delivered by his co-conspirators, regardless of his absence from the

---

[5]Although this claim might be construed as a sufficiency-of-the-evidence argument—in which case it would be procedurally defaulted, because Orlando did not raise it on direct review, *see Johnson v. Duneland School Corp.,* 92 F.3d 554, 557 (7th Cir. 1996)—the Court will consider it as part of his ineffective-assistance claims, which is how Orlando tried to frame it.

shakedowns. It was reasonable for Orlando's trial attorney to refrain from making an argument directly contradicted by the law.

Moving on to Orlando's other arguments, the next contention relies on Brown's flip from co-conspirator to government informant. Orlando points out an established principle of the law of conspiracy: there must be an agreement among co-conspirators who "actually intend to carry out the agreed-upon criminal plan"— so a government informant or an undercover agent cannot be, as a matter of law, a conspirator. *United States v. Corson*, 579 F.3d 804, 811 (7th Cir. 2009); *see also United States v. Pulgar*, 789 F.3d 807, 814 (7th Cir. 2015). But during the time of the charged conspiracy (spring of 2010 to November 2010), Brown was *not* a government agent or informant. *Orlando,* 819 F.3d at 1020-21. He did not begin cooperating with the government until 2011. *Id.* So during the time that Orlando and the others were meeting, planning, and committing the conspiracy to extort, Brown could qualify as a co-conspirator. Later cooperation does not somehow undo the pre-cooperation conspiracy. *See United States v. Villasenor*, 664 F.3d 673, 682-83 (7th Cir. 2011). Indeed, even after Brown started cooperating with the government, Orlando still could be deemed to have conspired with non-cooperators, like co-defendants Dziuban, Iozzo, and McManus. *See Corson*, 579 F.3d at 811 ("A defendant is not liable for conspiring *solely* with an undercover government agent or a government informant." (emphasis added)).

Next, Orlando complains that his attorney failed to "seek a special jury verdict form along with requisite instructions from the Court … ." Pet.'s Br. at 7.

Orlando does not specify what should have been in the special verdict form or what other instructions should have been given. The government is right that Orlando has waived the issue. Gov.'s Resp. Br. at 14; *see also United States v. Wimberly,* 60 F.3d 281, 287 (7th Cir. 1995). In any event, a special verdict form is only necessary where particular facts "increase[] the penalty for a crime beyond the prescribed statutory maximum" or set a mandatory minimum—those facts must be "submitted to a jury, and proved beyond a reasonable doubt." *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). These types of facts typically come up in drug cases, where a specific amount or type of drug might lift the statutory maximum or establish a mandatory minimum. Nothing like that is involved in this case. Orlando was convicted on a single count under the Hobbs Act and no particular jury finding would have changed his statutory maximum or set a mandatory minimum. There was no error in forgoing a special verdict form.

With regard to jury instructions, here too Orlando is not specific in saying what was missing. In the final jury instructions, the Court included a detailed definition of the "knowingly" mental state. Crim. R. 478 at 25. The instructions also defined the intent requirement as a separate element of the crime. *Id.* at 28, 34. Orlando fails to "specify what additional language the jury instruction should have contained" or how requiring it would "have changed the nature of this case at all." *Yu Tian Li v. United States*, 648 F.3d 524, 528-30 (7th Cir. 2011). There was no instructional error, and no lawyer deficiency on the instructions.

Orlando's final argument on ineffective assistance is that his attorney allegedly failed to move for a "directed verdict" based on the lack of threats or use of force. Pet.'s Br. at 10. But Orlando's attorney *did* move for a judgment of acquittal after the close of evidence.[6] Tr. 1408-1410. He argued that Orlando did not have the specific intent to enter into a conspiracy to use force to extort money. *Id.* at 1408-09. A month after the jury returned the guilty verdict, Orlando's counsel filed a post-trial motion to vacate the judgment, and again raised the argument that the government failed to prove that the conspiracy involved "threats of violence" necessary for the Hobbs Act conviction. Crim. R. 281 at 4. There was no deficient performance here (nor was there prejudice, in light of the substantial evidence of guilt).

## 2. Sentencing Challenges

Orlando argues that he should have received the minor-role reduction, USSG § 3B1.2, under the Sentencing Guidelines. He points to Amendment 794 to Section 3B1.2. U.S. SENTENCING GUIDELINES MANUAL, Supp. to App. C, amend. 794 (2016).[7] The amendment provides for greater flexibility in applying the minor-role reduction by clarifying the relevant factors, including consideration of the defendant's understanding of the crime's scope and the defendant's participation (or lack

---

[6]Federal Rule of Criminal Procedure 29(a)-(c) governs motions for judgment of acquittal in criminal cases. Orlando refers to a "directed verdict" throughout his briefing, but that is just another label for a Rule 29 motion. *E.g.*, Pet.'s Br. at 10. In the notes, the Advisory Committee acknowledges this name change but clarifies it "does not modify the nature of the motion or enlarge the scope of matters that may be considered." Fed. R. Crim. P. 29(a), 1994 Advisory Comm. Note.

[7]Orlando tried to frame his Amendment 794 arguments in an ineffective assistance light, but discussed them without any real connection to his attorney's performance. Pet.'s Br. at 4.

thereof) in organizing or exercising decision-making authority in the criminal activity. *Id.* Quoting new application note 3(C), Orlando argues that he had no "proprietary interest" in the criminal activity and was "simply paid to perform certain tasks." U.S.S.G. § 3B1.2, appl. n. 3(C) (quoted by Pet.'s Br. at 8). This argument fails. First, errors in the application of the Sentencing Guidelines are not directly reviewable under § 2255. *United States v. Wisch*, 275 F.3d 620, 625 (7th Cir. 2001). If an amendment has been made to a Guideline, then the proper vehicle for a sentence reduction is a motion under 18 U.S.C. § 3582(c)(2), which allows a court to reduce a previously imposed sentence when a sentencing range has "subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 944(o)." *United States v. Stallworth*, 2017 WL 3598397, at *1 (N.D. Ill. Feb. 13, 2017). But that route is available only when the Commission has deemed the amendment retroactive. Amendment 794 is not retroactive. *Id.* ("The Sentencing Commission, however, has never suggested that Amendment 794 is retroactive—a threshold requirement for relief under Section 3582(c)(2)—and courts in this circuit have unanimously denied similar Amendment 794 motions for that very reason").[8] Second, even if the amendment were deemed to be retroactive, Orlando's "substantial role" in the conspiracy, *Orlando*, 819 F.3d at 1025, would preclude even applying the amendment. He "launched the entire conspiracy," participated in at least one meeting to plan and discuss the extortions, served as the middleman

---

[8]At least one federal court has applied Amendment 794 on a direct appeal, but that was not in the context of a § 2255 motion and anyway the case has no binding effect on this Court. *United States v. Quintero-Leyva*, 823 F.3d 519, 521 (9th Cir. 2016) (holding "Amendment 794 applies retroactively in direct appeals" for offender sentenced one year before it went into effect).

between Dziuban and the others, provided the travel money for at least one trip, and even participated in the cover-up attempt. *Id.* Pre- or post-amendment, Orlando was not entitled to the minor-role reduction.

Finally, Orlando asks for relief under *Johnson v. United States*, because "crimes of violence now clearly are defined" and Orlando's "actions never resulted in the receipt of property due to violence." Pet.'s Br. at 9 (citing 135 S. Ct. 2551 (2015)). He does not explain his reasoning, but perhaps Orlando is trying to argue that the threat-of-force element in the Hobbs Act is unconstitutionally vague. *Cf. Johnson,* 135 S. Ct. at 2580 (holding that the residual clause of the Armed Career Criminal Act's violent-felony definition is void for vagueness). But in *Johnson,* the Court did not discuss the threat-of-force element under the Hobbs Act, 18 U.S.C. § 1951. And Orlando was not convicted of any sort of predicate offense that *Johnson*'s holding would apply to. *See Johnson,* 135 S. Ct. at 2580; *United States v. Vivas-Ceja*, 808 F.3d 719, 720 (7th Cir. 2015). He simply was convicted of conspiracy to commit extortion by threatened force or violence.

Similarly, to the extent that Orlando is trying to use *Johnson* to upend his sentence by challenging the potential vagueness of the Sentencing Guidelines themselves, his argument still fails. The Supreme Court has held that the Sentencing Guidelines simply are not subject to due-process vagueness challenges. *Beckles v. United States*, 137 S. Ct. 886, 895 (2017). Because the advisory Guidelines are just that—guidelines, not requirements—they do not fix the maximum or minimum sentence. So *Johnson* does not apply to Orlando's sentence.

## IV. Conclusion

For the reasons discussed, Orlando's § 2255 motion is denied. No certificate of appealability shall issue. In order to obtain a certificate, Orlando must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). That standard is met only if "reasonable jurists could debate whether … the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation omitted)). The ineffective-assistance and sentencing arguments are clearly meritless, so Orlando has not made the requisite showing. No certificate of appealability shall issue from this Court.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE:  November 30, 2017